**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

MARY HELMS and LINDA BAKER, for themselves, as private attorneys general, and/or on behalf of all others similarly situated,

Plaintiffs,

v.

SELECTBLINDS LLC,

Defendant.

Case No. 3:26-cv-05315-LK

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190**

**JURY TRIAL DEMANDED**

# CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Mary Helms and Linda Baker (collectively, "Plaintiffs"), demanding trial by jury as to all issues so triable, allege as follows, on personal knowledge and upon the investigation of counsel, against Defendant SelectBlinds LLC ("SelectBlinds" or "Defendant"):

## I. INTRODUCTION AND SUMMARY

1. This is a class action against SelectBlinds for false or misleading email marketing in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, and the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.

2. SelectBlinds owns and operates the SelectBlinds website, www.selectblinds.com, where it advertises and sells blinds, shades, and other window treatment products to consumers nationwide, including consumers in Washington State. SelectBlinds primarily offers its own proprietary self-branded products which are exclusively available on SelectBlinds.com and are not available for purchase anywhere else. SelectBlinds also manages its email advertising operations, where it sends advertising emails to consumers across the United States on its mailing list, including consumers in Washington State.

3. For years, SelectBlinds has engaged in a massive and consistent false discount advertising scheme across its website and in its marketing emails. Specifically, SelectBlinds advertises perpetual or near-perpetual discounts—typically 40% to 60% off—on all its products. These discounts are taken from SelectBlinds's inflated and self-created list prices for its products. SelectBlinds's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from SelectBlinds's own regular offering prices for the products. However, SelectBlinds's advertised discounts are false because SelectBlinds almost never offers or sells the products at their list price—and never in good faith.

4. SelectBlinds also falsely advertises "Buy 1 Get 1 Free" or other similarly worded offers where SelectBlinds represents that it will include one or more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. SelectBlinds's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the purchase of the first item at no more than that first item’s regular price. However, because the item is “discounted” by up to 60% off the list price at all other times, this means SelectBlinds is directly recovering all of the cost, or even more than the cost, of the “free” item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

5. SelectBlinds also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

6. An important part of SelectBlinds’s false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in the subject line. Many of the consumers who receive these emails with deceptive email subject lines are Washington State residents.

7. For example, SelectBlinds sends emails with subject lines that advertise false discounts at a specified purported percentage off (e.g., “**EVERYTHING on Our Site is 40% Off!**”). The stated discounts in the subject lines are materially false or misleading because, in reality, the discounts are being calculated from inflated and fictitious list prices at which SelectBlinds has almost never offered its products for sale.

8. SelectBlinds also sends emails with subject lines that advertise false “free” offers (e.g., “**Buy ☝️ Get ☝️ Free Sitewide! Today Only!**”). The subject lines are materially false or misleading because, in reality, the “free” items are not actually free; SelectBlinds directly recovers all of the cost, or even more than the cost, of the “free” item(s) by increasing the price of the first item to the inflated—and otherwise rarely charged—list price.

9. The subject lines of the emails are also materially false or misleading because they advertise that the purported savings are for a limited time and indicate that the products will return to the full price after the sale ends (e.g. “**40% Off Ends Soon ⏰ Time's Running Out**”), when in fact the advertised savings are perpetual and never-ending.

10. The subject lines of the emails are also materially false or misleading because they advertise that discounts are only available to a select or limited group of potential customers (e.g., **"→50% OFF VIP Early Black Friday Access Code Inside←"**) when in fact the discounts are available to anyone who shops on SelectBlinds' website.

11. The Washington Supreme Court held that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 596 (2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. "CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line." *Id.*, at 595. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.*, at 584.

12. Plaintiffs bring this lawsuit individually and on behalf of a class of consumers residing in Washington State who also received emails from SelectBlinds that contained false or misleading information in the subject line. Plaintiffs' requested relief includes an injunction to end the unlawful practices alleged herein. Plaintiffs also request, without limitation, an award for themselves and for each class member of $500 in statutory damages for each and every violative email received and for an award of attorneys' fees and costs.

## II. <u>THE PARTIES</u>

13. Plaintiff Mary Helms resides in the city of North Bonneville, in Skamania County, Washington, and she is a citizen of Washington State. Ms. Helms has been receiving SelectBlinds's violative promotional emails while residing in Washington State since at least August 21, 2020, when she made a purchase on the SelectBlinds website, through to the present day. Ms. Helms is an ordinary and unsophisticated consumer who is untrained in the law or in the interpretation of complex contracts.

14. Plaintiff Linda Baker resides in the city of Chelan, in Chelan County, Washington, and she is a citizen of Washington State. Ms. Baker received SelectBlinds's violative promotional emails while residing in Washington State in 2024. Ms. Baker is an



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

ordinary and unsophisticated consumer who is untrained in the law or in the interpretation of complex contracts.

15. Defendant SelectBlinds LLC ("SelectBlinds") is a limited liability company chartered under the laws of the State of Delaware with its principal place of business at 145 South 79th Street, Suite 85, Chandler, Arizona 85226.

16. SelectBlinds is an American manufacturer, marketer, and online retailer of custom window treatments, such as blinds, shades, and curtains. SelectBlinds primarily offers its own brand of proprietary self-branded products that are exclusively available on SelectBlinds.com and are not available for purchase anywhere else. SelectBlinds also manages its email advertising operations, where it sends marketing emails to consumers on its mailing list across the United States, including consumers in Washington State.

## III. THE PROCEDURAL HISTORY

17. Ms. Helms' action against SelectBlinds was originally filed in the Skamania County Superior Court as *Helms v. SelectBlinds LLC*, No. 26-2-00016-30 (Skamania Cty., Wash.). On March 31, 2026, SelectBlinds removed Ms. Helms' action to the U.S. District Court for the Western District of Washington ("Western District"), where the action was captioned *Helms v. SelectBlinds LLC*, No. 3:26-cv-05315-LK (W.D. Wash.) (the "*Helms* Action"). *See* SelectBlinds' Notice Of Removal, filed March 31, 2026 (*Helms* Action, Dkt. 1).

18. Ms. Baker's action against SelectBlinds was originally filed in the King County Superior Court as *Baker v. SelectBlinds LLC*, No. 26-2-08290-1 SEA (King Cty., Wash.). On April 10, 2026, SelectBlinds removed Ms. Baker's action to the Western District, where the action was captioned *Baker v. SelectBlinds LLC*, No. 3:26-cv-05315-LK (W.D. Wash.) (the "*Baker* Action"). *See* SelectBlinds' Notice Of Removal, filed April 10, 2026 (*Baker* Action, Dkt. 1).

19. This Consolidated Amended Complaint consolidates the *Helms* Action and the *Baker* Action. *See* Order To Consolidate Cases, dated May 5, 2026 (*Helms* Action Dkt. 8; *Baker* Action Dkt. 12). The Order To Consolidate Cases required Plaintiffs to file a Consolidated Amended Complaint. *Id.*, p. 5.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## IV. JURISDICTION AND VENUE

20. **Subject Matter Jurisdiction.** The federal courts are currently addressing the question of whether or to what extent a federal district court may exercise subject matter jurisdiction over claims grounded in violations of the CEMA statute. *See, e.g., Nuri v. True Religion Apparel*, No. 2:25-cv-00690-LK, 2026 WL 319198 (W.D. Wash.) (ordering removing defendants to show cause why civil action should not be remanded to state court for lack of concrete Article III injury). Consequently, each Plaintiff reserves the right to contest this Court's exercise of subject matter jurisdiction over this civil action.

21. SelectBlinds alleges that this Court possesses subject matter jurisdiction over this civil action pursuant to the removal jurisdiction provisions of the Class Action Fairness Act because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the plaintiff Class (defined below) is a citizen of a state different from any defendant. *See* Notice Of Removal, filed March 31, 2026, *Helms* Action Dkt. 1, pp. 1-4; Notice Of Removal, filed April 10, 2026, *Baker* Action Dkt. 1, pp. 1-4.

22. **Personal Jurisdiction.** This federal district court (and any Washington State court) may properly exercise personal jurisdiction over SelectBlinds for multiple reasons, including, without limitation, (1) SelectBlinds is registered to do business in Washington State, (2) SelectBlinds has transacted and continues to transact business in Washington State, including via its retail website www.selectblinds.com, (3) the claims alleged herein arise from SelectBlinds' intentional activities that were purposefully directed to and expressly aimed at Washington State and that caused harm that SelectBlinds knew was likely to be (or would foreseeably be) suffered in Washington State, (4) the claims of each Plaintiff arise out of or relate to SelectBlinds' Washington-related activities, (5) each Plaintiff resides in Washington State and was injured in Washington State, (6) the exercise of personal jurisdiction over SelectBlinds is reasonable, (7) SelectBlinds committed a tortious act within Washington State and/or committed a tortious act outside Washington State that had an impact inside Washington State, (8) SelectBlinds has engaged in violations of the CPA that have had an impact in



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Washington State which the CPA reprehends, and/or (9) SelectBlinds has initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission, of a commercial electronic mail message to an electronic mail address that SelectBlinds knew, or had reason to know, was held by a Washington State resident.

23. **Venue.** SelectBlinds alleges that venue is proper in the Western District pursuant to 28 U.S.C. § 1441(a) because the original underlying class actions were each filed in a Superior Court of the State of Washington and were each removed by SelectBlinds to the federal judicial district embracing the places where the original underlying actions were pending. *See* Notice Of Removal, filed March 31, 2026, *Helms* Action Dkt. 1, p. 5; Notice Of Removal, filed April 10, 2026, *Baker* Action Dkt. 1, p. 5.

## V. SELECTBLINDS'S FALSE DISCOUNT ADVERTISING SCHEME

24. SelectBlinds is an American manufacturer, marketer, and online retailer of custom window treatments, such as blinds, shades, and curtains. SelectBlinds owns and operates the SelectBlinds website, www.selectblinds.com, where it advertises and sells blinds, shades, and other window treatment products to consumers nationwide, including consumers in Washington State. SelectBlinds primarily offers its own proprietary self-branded products that are exclusively available on SelectBlinds.com and are not available for purchase anywhere else. SelectBlinds also manages its email advertising operations, where it sends marketing emails to consumers on its mailing list across the United States, including to consumers in Washington State.

25. For years, SelectBlinds has engaged in a massive and consistent false discount advertising scheme both on its website and in its marketing emails. Specifically, SelectBlinds advertises perpetual or near-perpetual discounts—typically 40% to 60% off—on all of its products. These discounts are taken from SelectBlinds's advertised list prices for its products. SelectBlinds's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from SelectBlinds's own regular offering prices for its products. However, SelectBlinds's advertised discounts are false. SelectBlinds almost never offers or sells its products at their list price—and never in good faith.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

26. SelectBlinds also falsely advertises "Buy 1 Get 1 Free" or other similarly worded offers where SelectBlinds represents that it will include one or more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. SelectBlinds's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, because the item is "discounted" by up to 60% off the list price at all other times, this means SelectBlinds is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

27. SelectBlinds also falsely advertises that the purported savings are for a limited time and indicates that its items will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

28. The subject lines of the emails are also materially false or misleading because they advertise that discounts are only available to a select or limited group of potential customers (e.g., **"→50% OFF VIP Early Black Friday Access Code Inside←"**) when in fact the discounts are available to anyone who shops on SelectBlinds' website.

29. SelectBlinds aggressively advertises false discounts throughout its website. For example, on its product list pages, SelectBlinds typically advertises the discounts by displaying a discounted selling price above a strikethrough purported regular price. SelectBlinds displays percentage-off savings in red font to further illustrate how much a consumer is purportedly saving. (e.g., "50% OFF"). At other times, SelectBlinds displays the reference price and states above it in red font that the applicable discount will be applied once the product is added to the cart (e.g., "UP TO 50% OFF. APPLIED IN CART. $89.99").

30. SelectBlinds intends that consumers understand the reference price (the price to which the advertised discounts are applied) to reflect SelectBlinds's regular former price for the product. SelectBlinds intends that consumers understand the reference price to represent the value of the product. SelectBlinds intends that consumers understand and believe that by



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

purchasing the product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised percentage-off and dollars-off savings from the product's regular price.

31. Plaintiffs' counsel's investigation has revealed that SelectBlinds advertises perpetual discounts on all of its products, and which are almost never sold at their stated reference prices.

32. SelectBlinds perpetrates this false discount advertising scheme on its website and in its advertising emails because it works—lying about discounts increases demand and increases SelectBlinds's revenues and profits.

33. Decades of academic research has established that the use of discount advertising like that utilized by SelectBlinds materially impacts consumers' behavior by affecting the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[1]

---

[1] *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

34. Consumers who are presented with discounts are substantially more likely to make the purchase. “Nearly all consumers (94%) search for a deal or offer when shopping online,” “81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey,” and “two-thirds of consumers have made a purchase they weren’t originally planning to make solely based on finding a coupon or discount.” RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

35. Federal and state courts have articulated the abuses that flow from false discount advertising practices like those perpetrated by SelectBlinds. For example, the Ninth Circuit explained: “Most consumers have, at some point, purchased merchandise that was marketed as being ‘on sale’ because the proffered discount seemed too good to pass up. Retailers, well aware of consumers’ susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher ‘original’ price in order to induce customers to purchase merchandise at a purportedly marked-down ‘sale’ price.” *Hinojos v. Kohl’s Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

## VI. SELECTBLINDS SENDS MARKETING EMAILS WITH MATERIALLY FALSE OR MISLEADING DISCOUNTS IN THE SUBJECT LINE IN VIOLATION OF CEMA

36. A principal part of SelectBlinds’s false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts, typically by advertising percentage-off or “free” offer discounts in the subject line.

37. In reality, however, these subject lines are materially false of misleading in violation of CEMA because the advertised percentage-off discounts are phony and are calculated from inflated and fictitious reference prices at which SelectBlinds never or almost never offered it products. The “free” offer subject lines are also misleading because SelectBlinds typically advertises its products as being “discounted” by up to 60% off the list price at all other times, meaning SelectBlinds is directly recovering all of the cost, or even more



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

### A. <u>CEMA Prohibits Sending Washington Residents Commercial Emails With False Or Misleading Subject Lines.</u>

38. CEMA regulates deceptive email marketing.

39. CEMA prohibits a person from initiating or conspiring to initiate the transmission to an email address that the sender knows, or has reason to know, is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b).

40. The Washington Supreme Court has confirmed that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown*, 4 Wn.3d at 596 (emphasis in original). This includes false or misleading information about promotions, sales, or other pricing information. "CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line." *Id.*, at 595.

41. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019) (holding that plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line).

42. An injury occurs any time a commercial email is transmitted that contains false or misleading information in the subject line. *Harbers*, 415 F. Supp. 3d at 1011. Under CEMA, it is irrelevant whether the misleading commercial emails were solicited. *Id.*

43. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Brown*, 4 Wn.3d at 584.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

44. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). However, because a violation of CEMA is a per se violation of the CPA, all five elements are satisfied as a matter of law. *Id.* at 724; *see also Brown*, 4 Wn.3d at 584.

45. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 4 Wn.3d at 584. Accordingly, "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Id.* at 592; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

46. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it."). "Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages." *Brown*, 4 Wn.3d at 584.

47. SelectBlinds has violated CEMA by sending Plaintiffs and Class members emails with false or misleading information in the subject lines.

48. As alleged in detail herein, the percentage-off discounts and "free" offers advertised in SelectBlinds's email subject lines are false and misleading, in violation of CEMA. In reality, SelectBlinds advertised perpetual discounts for the products and virtually never offered its products at their advertised reference prices. Furthermore, SelectBlinds sent the false and misleading commercial emails to email addresses that SelectBlinds knew, or had reason to know, were held by Washington State residents.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

### B. SelectBlinds Has Transmitted Numerous Commercial Emails With False Or Misleading Subject Lines In Violation Of CEMA.

49. SelectBlinds has transmitted hundreds of commercial emails with false or misleading subject lines to Plaintiffs and other Washington residents in violation of CEMA and the CPA. (As used in this pleading, allegations that SelectBlinds "transmitted" or "sent" an email are allegations that SelectBlinds initiated the transmission of the email, conspired with another to initiate the transmission of the email, and/or assisted the transmission of the email.)

50. These violative emails have subject lines advertising materially false percentage-off discounts or materially false "free" offers.

#### 1. SelectBlinds Transmits Emails With Subject Lines Advertising False Percentage-Off Discounts.

51. SelectBlinds transmits commercial emails with subject lines advertising large percentage-off discounts (typically between 40% to 60% off). These email subject lines are materially false or misleading in violation of CEMA and the CPA because the advertised percentage-off discounts are phony and are calculated from inflated and fictitious list prices at which SelectBlinds never or almost never offered its products—and never in good faith.

52. Based on the investigation of Plaintiffs' counsel, SelectBlinds sent Washington State residents like Plaintiffs hundreds of such violative percentage-off emails. The following is a non-exhaustive list of such emails sent by SelectBlinds on the date, and containing the email subject line, specified below:

| Date | Email Subject Line |
|---|---|
| 02/25/2026 | Brighten Your Space the Easy Way – Up to 50% Off |
| 02/24/2026 | More Light, Less Effort – Save Up to 50% |
| 02/23/2026 | Ends Tonight! Up to 55% + Extra 5% Off Extended Presidents Day |
| 02/20/2026 | Extended Presidents Day–Up to 55% Off |
| 02/19/2026 | Last Day! Presidents Day Sale – Up to 55% Off Sitewide |
| 02/18/2026 | Presidents Day Sale Ends Soon! Up to 55% Off + Extra 10% Off Coupon Inside |
| 02/15/2026 | Save Up to 55% During Our Presidents Day Sale |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 02/15/2026 | ICYMI: Presidents Day Savings Up to 55% |
| 02/14/2026 | BIG Savings This Presidents Day! Up to 55% Off |
| 02/12/2026 | Presidents Day Savings Start Now! Up to 55% Off 💙 🤍 💙 |
| 02/11/2026 | Last Chance for Valentine's Comfort—Save Up to 50% |
| 02/10/2026 | 💕 Love at First Light—Save Up to 50% Sitewide 💕 |
| 02/09/2026 | Last Day! Game On for Better Light Control—Save Up to 50% |
| 02/06/2026 | Game On for Better Light Control—Save Up to 50% |
| 02/05/2026 | Last Day! Love Your Home Event—Up to 50% Off |
| 01/29/2026 | Final Day! Add Warmth the Easy Way—Save Up to 50% |
| 01/28/2026 | Pantone's Color of the Year—Add Warmth & Save Up to 50% |
| 01/27/2026 | Last Day! Up to 50% Off—Let the Light In, Keep Warm |
| 01/26/2026 | Ending Soon! Light & Warmth Event—Save Up to 50% |
| 01/20/2026 | A Warmer Home Starts Here—45% Off with Coupon Code |
| 01/19/2026 | Last Day: Up to 50% Off + Bonus Savings |
| 01/18/2026 | Winter Upgrade Event—Save Up to 50% |
| 01/17/2026 | Save Up to 50% on No-Drill Winter Upgrades |
| 01/09/2026 | Save Up to 50%—Comfort That Carries You Through Winter ❄️ |
| 01/08/2026 | Final Day—Up to 45% Off—Start the Year Smarter |
| 01/07/2026 | Save Up to 45%—Smart Design, Real Savings |
| 01/06/2026 | New Year, Smarter Choices—Up to 45% Off |
| 12/30/2025 | Up to 55% Off—The Right Light for the Year Ahead |
| 12/29/2025 | Save Up to 55% Off—Start the Year Feeling Better at Home |
| 12/28/2025 | Up to 55% Off—Our New Year's Sale Starts Now ✨ |
| 12/27/2025 | Save Up to 50% and Lower Energy Bills |
| 12/19/2025 | Up to 45% Off—Set the Glow for the Holidays 🎄 |
| 12/18/2025 | Last Day! Save Up to 50%* Ends Tonight ⏳ |
| 12/16/2025 | Quick Ship Favorites + Save Up to 50%* |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 12/15/2025 | Final Day: 40% Off + Extra 10% on Orders $750+ |
| 12/11/2025 | Up to 50% Off Sitewide–Holiday Refresh Sale Ends Tonight! |
| 12/10/2025 | Holiday Savings Continue—Up to 50% Off |
| 12/09/2025 | Total Blackout, Total Savings—Buy 2 & Save Up to 50% |
| 12/08/2025 | Last Day for Brighter Savings—Up to 60% Off Ends Tonight |
| 11/28/2025 | It's Black Friday! Save Up to 60% Today |
| 11/27/2025 | Up to 60% Off—Black Friday Savings Are Here 🔥 |
| 11/26/2025 | It's Time! Black Friday Deals Are Here! Up to 60% Off! |
| 11/25/2025 | Up to 50% Off — Early Black Friday Savings Inside! |
| 11/12/2025 | NEW: Subtle Day & Night Romans – Up to 55% Off! |
| 11/11/2025 | Last Day! Up to 55% Off Veterans Day Sale Ends Tonight! |
| 11/10/2025 | Up to 55% Off Sitewide! Veterans Day Savings Continue |
| 11/09/2025 | Veterans Day Deals – Save Up to 55% |
| 11/01/2025 | Take 45% Off Sitewide – Safe Shades for Every Room |
| 10/31/2025 | Last Day! Up to 55% Off Disappears Tonight! |
| 10/30/2025 | 🍬 Halloween Sale Ends Tomorrow! Up to 55% Off Sitewide |
| 10/29/2025 | Halloween Savings Continue! Up to 55% Off Sitewide |
| 10/19/2025 | Up to 50% Off – Blackout + Insulation = Style That Works |
| 10/18/2025 | Last Chance to Use Your 50% Off Code |
| 10/17/2025 | 2 Days Only! Take 50% Off with Your Exclusive Code |
| 10/15/2025 | 50% Off Sitewide* – Simple Installs, Big Savings |
| 09/29/2025 | Last Day! Take 45% Off Sitewide – Ends at Midnight ⏳ |
| 09/28/2025 | Take 45% Off – Three Ways to Go Drill-Free |
| 09/27/2025 | Upgrade for Fall – Take 45% Off Blinds & Shades |
| 09/26/2025 | Save 45% Today – No Drill, No Hassle Shades |
| 09/25/2025 | Easy Install, Comfort for Fall – Take 45% Off $99+ |
| 09/18/2025 | 50% Off $99+ and Extra 5% Off Featured Products Today |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 09/17/2025 | Take 50% Off $99+! And an Extra 5% Off Featured Products |
| 09/07/2025 | Still Time! 50% Off Labor Day Extended! |
| 09/06/2025 | Final Days! Extended Labor Day 50% Off Access |
| 08/18/2025 | Last Day! Up to 50% Off 💤 |
| 08/17/2025 | Sleep Better Tonight – Up to 50% Off Blackout Shades |
| 08/16/2025 | Blackout Shades = Better Sleep 💤 Save Up to 50% |
| 08/05/2025 | No Drills, No Delays — Up to 45% Off $99+ |
| 06/28/2025 | Final Day for Twist2Fit No-Drill Blinds at 50% Off $99+ |
| 05/26/2025 | ⭐ 60% OFF ⭐ MEMORIAL DAY SALE ⭐ |
| 04/28/2025 | Last Chance: 45% Off Spring Refresh Sale Ends Tonight! |
| 04/27/2025 | 45% Off 🌼 Freshen Up Your Space |
| 04/26/2025 | Limited Time! 45% Off Sitewide |
| 04/25/2025 | 45% Off Starts Today 🎉 |
| 04/06/2025 | Up to 50% Off Sitewide Ends Tomorrow |
| 04/05/2025 | Up to 50% Off All Weekend Long |
| 04/04/2025 | Spring into Savings 🌷 Up to 50% Off Sitewide |
| 03/29/2025 | 50% Off Sitewide Ends Soon |
| 03/28/2025 | Upgrade Your Bedroom with 50% Off New Shades |
| 03/27/2025 | Dreamy Deals 💭 Shop 50% Off Sitewide |
| 03/24/2025 | Last Day for 50% Off Custom Window Treatments |
| 03/23/2025 | Don't Wait - 50% Off Sitewide Ends Tomorrow |
| 03/22/2025 | Rest Easy & Save Big w/ 50% Off Custom Shades |
| 03/16/2025 | 50% Off Sitewide Ends Soon! |
| 03/15/2025 | Shop Lucky Deals ➡️ 50% Off Window Coverings! |
| 01/21/2025 | Up to 50% Off Sitewide Ends Today |
| 01/19/2025 | Ending Soon ➡️ Up to 50% Off All Window Coverings |
| 01/17/2025 | Get Up to 50% Off Window Coverings |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 01/16/2025 | Final Hours! 45% Off Window Blinds & Shades |
| 12/23/2024 | Buy 2, Get 40% Off Sitewide |
| 11/24/2024 | Early Black Friday Access ➡️ 50% Off Sitewide |
| 09/14/2024 | Buy 2 + Get 40% Off Sitewide Ends Today! |
| 09/13/2024 | Don't Forget: Buy 2 + Get 40% Off Sitewide! |
| 09/12/2024 | Buy 2 + Get 40% Off Sitewide! |
| 08/16/2024 | Ends Tomorrow: Buy 2, Get 40% Off |
| 07/29/2024 | 🎉 45% Off Birthday Code Inside 🎉 |
| 03/07/2024 | 40% Off Ends Soon ⏰ Time's Running Out |
| 03/06/2024 | EVERYTHING on Our Site is 40% Off! |
| 03/05/2024 | Drop Everything & Get 40% Off Sitewide! |
| 12/17/2023 | Today's Deal ➡️ 45% + 5% OFF |
| 12/16/2023 | Get 45% Off Window Coverings! Today Only! |
| 12/12/2023 | 🚨 50% OFF TOP 5 CATEGORIES 🚨 Today Only! |
| 12/11/2023 | TODAY: 45% Off + Add'l 10% Off Featured Dual Shades ❗ |
| 12/10/2023 | 💥 45% Off + Add'l 10% Off Featured Woven Wood Shades 💥 |
| 09/15/2023 | Save 40% on Window Coverings! |
| 09/14/2023 | ONE DAY ONLY ➡️ 50% OFF! |
| 09/13/2023 | Elevate Your Space with 40% Off! |
| 09/12/2023 | Save Big, Smile Big With 40% Off 😁 😁 |
| 09/11/2023 | Save 40% Off Blinds, Shades & Curtains Continues! |
| 06/30/2023 | Shop 45% + 5% off sitewide! 🎇 |
| 02/27/2023 | 📣 LAST DAY OF 50% OFF SITEWIDE 📣 |
| 02/26/2023 | Ends Tomorrow ➡️ 50% Off Sitewide! Hurry! 🏃 |
| 02/25/2023 | We're Not Throwing Away Your Shot On 50% Off! |
| 02/23/2023 | ICYMI: It's Still 50% Off Sitewide!!! 🤓 |
| 02/21/2023 | 💥 ONE MORE CHANCE FOR 50% OFF SITEWIDE 💥 |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 02/20/2023 | Happy Presidents Day! 🎆 Take 50% Off Sitewide! |
| 02/19/2023 | 50% OFF SITEWIDE 💵 Washington on Your Side 💵 |
| 02/18/2023 | Hours Left to Save 50% Off SITEWIDE! |
| 02/16/2023 | Take 50% Off Sitewide This Week!!! |
| 12/30/2022 | 50% Off Sitewide + Add'l 5% Off Roman Shades 🦉 |
| 12/28/2022 | ⚡ 35% Off All Products + Extra 15% Off ⚡ |
| 12/26/2022 | Ends Tonight: 25% Off + Add'l 25% Off Everything!!! |
| 12/22/2022 | 30% Off Everything + 20% Off All Products Continues! ⛄ |
| 12/21/2022 | 50% Off Motorization Wands 🪄 It's a Wand-erful Life 🪄 |
| 11/30/2022 | 🚨 55% Off Everything! CYBER MONDAY LAST CALL 🚨 |
| 11/28/2022 | 55% Off Site-Wide! Free Shipping! |
| 11/27/2022 | Black Friday 55% Off Savings Ends Tonight! |
| 11/26/2022 | Black Friday Extended! 55% Off Everything |
| 10/31/2022 | LAST DAY of our Scary Good Sale! 31% off + ANOTHER 31% off |
| 10/21/2022 | A Jewel of a Deal 💎 50% Off Jewel Tone Drapes |
| 10/12/2022 | Ending Now! 47% Off All Products |
| 09/30/2022 | Influencer Fave Sale! Save 30% Off + Up to Xtra 20% |
| 09/02/2022 | Don't Miss Out on 45% Off ALL for Labor Day Weekend Savings |
| 09/01/2022 | 45% Off All Products For Our Labor Day Weekend Sale |
| 08/31/2022 | 💰 This is HUGE (!) 45% Off All, All Labor Day Weekend Long |
| 08/01/2022 | It's Our 19th Birthday Month! 35% Off All + Extra 10% Off |
| 07/31/2022 | 35% Off All + Extra 5% Off: Cool Summer Looks for Windows |
| 07/30/2022 | Level Up Your Windows: 35% Off All Products + Up To Extra 5% |
| 06/29/2022 | Biggest 4th of July Sale (!) Up to 45% Off All + Extra 5% |
| 06/28/2022 | Never too Young for Some Adventure (!) Up to 40% Off All |
| 05/31/2022 | The sale just got better! Now 50% off Everything! |
| 05/30/2022 | FINAL HOURS! 40% off + Extra 10% on Everything |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 05/29/2022 | Don't miss this! 40% off + Extra 10% on EVERYTHING |
| 04/03/2022 | Savings You'll 💜 35% Off All + Extra 10% Off Everything! |
| 04/02/2022 | 🌸 Sweet Spring in Full Swing - 35% Off All + Extra 10% Off 🌸 |
| 03/30/2022 | ⭕ It's that Spring Refresh Time! 30% Off All + 15% Extra |

53. Ms. Helms, while residing in Washington State, received the violative emails listed above from SelectBlinds.

54. In addition, Ms. Baker, while residing in Washington State, received from SelectBlinds multiple violative emails on these dates and containing these subject lines:

| **Date** | **Email Subject Line** |
|---|---|
| 11/08/2024 | 45% Off Sitewide \| Veterans Day Sale |
| 11/12/2024 | Final Hours: 45% Off Sitewide |
| 11/15/2024 | → 50% Off VIP Early Black Friday Access Code Inside ← |
| 11/23/2024 | ENDS TODAY: 50% Off Code Expires Tonight |
| 11/23/2024 | Final Hours to Use Your VIP 50% Off Code |
| 11/25/2024 | 55% Off VIP Code Inside 💌 Early Black Friday Savings |

55. The advertised percentage-off discounts in these email subject lines are viewed both under the law and by reasonable consumers to refer to discounts from SelectBlinds's own regular offering prices for its products. In reality, SelectBlinds calculated the "XX% Off" statements from fictitious list prices at which SelectBlinds virtually never offered its products. Meanwhile, there was no qualifier or other indicator in the subject line to notify the email recipients that SelectBlinds had assigned these words and symbols an invented or unusual subjective meaning rather than their ordinary or objective meaning.

56. The discounts in SelectBlinds's email subject lines are never-ending and false. For example, as shown in the email subject lines table above, SelectBlinds started advertising a "50% Off Sitewide" sale on February 16, 2023. On February 18, 2023, SelectBlinds sent an email with a subject line claiming that there were only "Hours Left" on the sale. Contrary to its



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

representations, on February 19, 2023, and February 20, 2023, SelectBlinds continued to send emails with subject lines advertising the "50% Off Sitewide" despite the previous "Hours Left" language.

57. As shown in the subject lines table above, on February 21, 2023, SelectBlinds sent another email about the sale, claiming in the subject line that there was only "ONE MORE CHANCE" to take advantage of the discount. However, two days later on February 23, 2023, SelectBlinds sent another email claiming in its subject line that "It's Still 50% Off Sitewide." Then, on February 27, 2023, SelectBlinds sent an email with a subject line claiming that it was finally the "LAST DAY OF 50% OFF SITEWIDE," creating the impression that after that the already twice extended sale would finally end and SelectBlinds products would return to their full prices. Instead, on the very next day, February 28, 2023, SelectBlinds sent an email with the subject line "45% Off Sitewide." Rather than ending the sale, SelectBlinds merely changed it slightly and continued to advertise its products at a significant purported discount.

58. In addition, the subject lines of the emails are also materially false or misleading because they advertise that discounts are only available to a select or limited group of potential customers (e.g., **"→50% OFF VIP Early Black Friday Access Code Inside←"**) when in fact the discounts are available to anyone who shops on SelectBlinds' website.

### 2. SelectBlinds Transmits Emails With Subject Lines Advertising False "Free" Offers.

59. SelectBlinds also sends commercial emails with subject lines advertising "free" offers such as "Buy 1 Get 1 Free," "Buy One Get One Free," or "BOGO Free." The "free" offers advertised in these email subject lines are materially false or misleading in violation of CEMA and the CPA because SelectBlinds inflates the first item's selling price (typically at least doubling it from the true regular price) to recover the cost of the "free" item, such that the "free" offer is phony.

60. Based on the investigation of Plaintiffs' counsel, SelectBlinds sent Washington State residents like Plaintiffs hundreds of such violative "free" offer emails. The following is a non-exhaustive list of such emails sent on the date, and containing the email subject line,



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

specified below:

| **Date** | **Email Subject Line** |
|---|---|
| 09/30/2025 | Today Only! Buy 1, Get 1 Free Sitewide 💥 |
| 09/16/2025 | Today Only! Buy 1, Get 1 Free! Plus, Add'l 5% Off Featured Products |
| 09/10/2025 | Get More for Less – Buy 1, Get 1 Free Today |
| 09/09/2025 | Buy 1, Get 1 Free ➡️ No-Drill Styles Inside |
| 08/19/2025 | Today Only! Buy One, Get One Free 🏖️ |
| 07/23/2025 | Buy One, Get One Free on Energy-Efficient Window Coverings |
| 05/08/2025 | Ends Tonight: Don't Miss Buy 1, Get 1 Free! |
| 05/07/2025 | Buy 1, Get 1 Free! Just in Time to Celebrate Mom 💕 |
| 02/28/2025 | Final Hours to Buy 1, Get 1 Free on Custom Window Coverings |
| 02/27/2025 | Buy 1, Get 1 Free Ends Tomorrow |
| 02/25/2025 | Buy 1, Get 1 Free for a Limited Time |
| 12/12/2024 | Hurry ⏳ Buy 1, Get 1 Free Ends Soon |
| 12/11/2024 | Buy 1, Get 1 Free Sitewide for a Limited Time |
| 10/17/2024 | FINAL HOURS: Buy 1, Get 1 Free |
| 10/16/2024 | Buy 1, Get 1 Free! Two Days Only! |
| 10/03/2024 | Buy 1, Get 1 Free Ends Today |
| 10/02/2024 | ATTN: IT'S BUY 1, GET 1 FREE |
| 08/08/2024 | Buy 1, Get 1 Free! Today Only! |
| 07/05/2024 | FINAL HOURS TO BUY 1, GET 1 FREE! |
| 07/03/2024 | 4th of July Sale Ends Tomorrow! Buy 1, Get 1 Free! |
| 07/02/2024 | BUY 1, GET 1 FREE 🎇 4TH OF JULY SALE |
| 02/25/2024 | Buy 1, Get 1 Free Ends Tomorrow! |
| 02/24/2024 | Get What You Need w/ Buy 1, Get 1 Free! |
| 01/07/2024 | Buy 1, Get 1 Free Starts NOW 🙌 |
| 12/19/2023 | ATTN: Buy 1, Get 1 Free Ends Tonight! |
| 12/06/2023 | Buy 1, Get 1 Free + Add'l 10% Off Featured Romans! Today Only! |



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| | |
|---|---|
| 10/19/2023 | Buy 1, Get 1 Free 💥 Today Only 💥 Buy 1, Get 1 Free 💥 |
| 10/16/2023 | Today Only: BOGO Free! Get Your Home Ready to Host! |
| 09/21/2023 | Back for Just Today ➡️ Buy 1, Get 1 Free! |
| 09/18/2023 | Buy 1, Get 1 Free 🎉 TODAY ONLY 🎉 |
| 08/24/2023 | ATTN: It's Buy 1, Get 1 Free! Today Only! |
| 08/17/2023 | It's Buy 1, Get 1 Free! 🔲 🔲 Ends Tonight! |
| 08/07/2023 | Celebrate Our B-Day w/ Buy 1, Get 1 Free 🎈 🎈 |
| 08/02/2023 | 08/02 TODAY: Buy 1, Get 1 Free! Don't Miss Out! |
| 07/30/2023 | Create Restful Rooms with Buy 1, Get 1 Free! 🧘 🧘 |
| 06/24/2023 | LAST CALL: Buy 1, Get 1 Free Ends Today! |
| 06/23/2023 | BOGO Free Starts Now! 😘 |
| 06/20/2023 | Get Summer Ready ⭕ BOGO Free - Today Only! |
| 06/01/2023 | ICYMI: Buy 1, Get 1 Free Sitewide is Happening Now! |
| 05/31/2023 | Buy 1, Get 1 Free is Back Again! 👏 👏 |
| 05/19/2023 | ONE DAY ONLY ➡️ Buy 1, Get 1 Free Sitewide! |
| 05/17/2023 | 👉 Today Only! Buy 1, Get 1 Free! 👈 |
| 05/02/2023 | It's Buy One, Get One Free on EVERYTHING! |
| 04/23/2023 | Hurry!!! Buy One, Get One Free Ends Today! |
| 04/16/2023 | ENDS TODAY: Buy One, Get One Free on Everything! |
| 04/14/2023 | Don't miss your chance for Buy One, Get One Free |
| 01/09/2023 | 🚨 One More Chance to Get Buy One, Get One Free! 🚨 |
| 01/08/2023 | Get Your 🛒 for Buy One, Get One Free! Today Only!!! |
| 12/08/2022 | Our 🎁 to You: Buy One, Get One FREE on ALL Products |
| 12/07/2022 | HURRY 👟 It's Buy One, Get One FREE on EVERYTHING!!! |
| 12/01/2022 | 📣 BOGO Free on ALL Products + 10% Off All Cellulars! |
| 10/24/2022 | First Time Ever! Buy One, Get One FREE |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

61. Plaintiff Mary Helms, while residing in Washington State, received the violative emails listed above from SelectBlinds.

62. The "free" offer statements in these email subject lines are false and misleading. Advertised "free" offers such as these are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, whenever SelectBlinds makes such a purported "free" offer, SelectBlinds inflates the first item's selling price to its never-otherwise-charged list price. Because the item is "discounted" by up to 60% off the list price at all other times, this means SelectBlinds is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

63. The Federal Trade Commission warns sellers advertising "Free" offers that "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). "[W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased[.]" 16 C.F.R. § 251.1(b)(1).

64. Accordingly, it is deceptive for a seller making a "Free" offer to "increase[] his regular price of the article required to be bought." 16 C.F.R § 233.4(b). "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a 'Free' or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30–day period." 16 C.F.R. § 251.1(b)(2).

65. The above emails are only a fraction of the total number of such violative emails SelectBlinds sent to Washington State residents within the applicable limitations period.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

66. As of the date of the filing of this pleading, Plaintiff Helms is still receiving SelectBlinds's commercial emails. Plaintiff Helms would like to continue receiving SelectBlinds's commercial emails, provided that the subject lines of the emails do not contain false or misleading information.

**C. <u>SelectBlinds Sent Commercial Emails to Consumers Who It Knew, Or Had Reason To Know, Resided In Washington State.</u>**

67. SelectBlinds sent the false and misleading commercial emails to email addresses that SelectBlinds knew, or had reason to know, were held by Washington State residents (i.e., Plaintiffs and the members of the Class), because SelectBlinds had a physical Washington State address that was associated with the recipient and/or SelectBlinds had access to data regarding the recipient indicating that he or she resided in Washington State. SelectBlinds knew or should have known that Plaintiffs and the members of the Class were residents of Washington State.

68. For virtually all of the recipients of its commercial emails, SelectBlinds knew the state in which they resided because they previously provided their physical address to SelectBlinds when they had placed an order through the SelectBlinds website. Whenever a person places an order through the SelectBlinds website, SelectBlinds associates that email address with the shipping address and billing address provided for the order.

69. In addition, SelectBlinds knew the state in which email recipients resided because SelectBlinds had access to data regarding the recipient that included the recipient's state of residence, such as IP address geolocation data, and/or SelectBlinds collects postal addresses of consumers during its mailing list sign-up process.

70. Discovery will show that, at the time SelectBlinds sent the commercial emails to the members of the Class, SelectBlinds had the physical address for virtually every single Class member.[2]

---

[2] SelectBlinds also had other methods by which it could have determined whether the consumers to whom it sent the violative emails resided in Washington. Discovery will show that SelectBlinds employs methods to track the effectiveness of its marketing emails and to identify consumers who click on links contained in SelectBlinds's marketing emails, including by identifying their physical location. SelectBlinds could have used the information obtained through these online tracking technologies to identify which consumers are in Washington.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## VII. PLAINTIFFS' ALLEGATIONS ARE BASED ON COUNSEL'S COMPREHENSIVE INVESTIGATION INTO SELECTBLINDS'S PRACTICES

71. Plaintiffs' allegations concerning SelectBlinds's false discount advertising scheme are based on Plaintiffs' counsel's comprehensive investigation of the SelectBlinds website using counsel's proprietary web scraping software, and also on counsel's investigation of archived SelectBlinds webpages on the Internet Archive's Wayback Machine (available at www.archive.org).[3]

72. Plaintiffs' counsel has been monitoring and scraping the SelectBlinds website on an automated daily basis with a proprietary software program since April 2024. Counsel has compiled and extracted daily pricing and marketing data from the website for most of the products SelectBlinds has offered on its website during this time. In total, counsel has assembled and analyzed a historical database of daily prices and time-stamped screenshots of over 168,000 daily offerings of approximately 579 products during this time.

73. Additionally, counsel examined over one hundred randomly selected screenshots of the SelectBlinds website from the Internet Archive's Wayback Machine, going back to 2021. In every single screenshot that counsel examined, every product shown was displayed with a discount from an advertised reference price. Based on this investigation, counsel determined that SelectBlinds's false discount advertising scheme has been ongoing since at least 2021.

74. Plaintiffs' counsel has also investigated and reviewed years of marketing emails sent by SelectBlinds to its customers. The perpetual percentage-off discounts and "free" offers

---

Additionally, SelectBlinds knew, or had reason to know, that the email addresses were held by Washington residents because this information was available to SelectBlinds upon request from the registrant of the internet domain name contained in each recipient's email address. *See* RCW 19.190.020(2). SelectBlinds also knew or had reason to know that it sent emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country. *See State v. Heckel*, 122 Wn. App. 60, 69 (2004) (holding as a matter of law that a defendant had a reason to know that he sent emails to Washington residents by sending over 100,000 emails a week to people around the country).

[3] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

which SelectBlinds advertised, and continues to advertise, in the subject lines of its marketing emails are consistent with the false discounts and pricing on the SelectBlinds website.

75. Counsel's investigation and data shows that SelectBlinds advertises perpetual discounts for nearly all of its products, typically ranging from 40% to 60% off.

76. The stated percentage-off and other similar discounts are always false, and SelectBlinds's list prices to which the discounts are applied are false and inflated. In fact, for every single product that SelectBlinds advertises with a discount, SelectBlinds has almost never offered the product at the reference price without a discount—and never in good faith.

77. SelectBlinds's false discount advertising is so pervasive across all of its products and in all of its advertising that it is apparent that the heart of SelectBlinds's marketing plan is to deceive the public.

78. Counsel's investigation into SelectBlinds's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiffs' allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiffs] cannot reasonably be expected to have detailed personal knowledge of [SelectBlinds's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiffs] need not specifically plead facts to which [Plaintiffs] cannot 'reasonably be expected to have access,' [Plaintiffs'] allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiffs' allegations are based not only on information and belief, but also on a comprehensive investigation of SelectBlinds's historical advertising which was as thorough as possible under the circumstances.

## VIII. CLASS ALLEGATIONS

79. **Class Definition.** Plaintiffs Mary Helms and Linda Baker bring this lawsuit on behalf of themselves and the members of the following class (the "Class"):

> **All consumers who, within the applicable limitations period, received, while residing in Washington State, an email from or at the behest of SelectBlinds that contained in the subject line: (a) a**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**"XX% Off" or similar percentage-off statement and/or (b) a statement advertising a "free" offer.**

80. Specifically excluded from the Class are SelectBlinds, any entity in which SelectBlinds has a controlling interest or which has a controlling interest in SelectBlinds, SelectBlinds's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

81. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in SelectBlinds's records and can be easily ascertained from those records.

82. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether SelectBlinds sent commercial emails with false or misleading information in the subject lines;

b. Whether SelectBlinds initiated the transmission or conspired to initiate the transmission of such commercial emails to recipients residing in Washington State;

c. Whether SelectBlinds should be ordered to pay statutory damages to Plaintiffs and Class members; and

d. Whether SelectBlinds should be enjoined from further engaging in the misconduct alleged herein.

83. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of SelectBlinds's standard practices and schemes. Further, SelectBlinds transmitted, conspired to transmit, or assisted to transmit emails with false or misleading information in the subject line to Plaintiffs and to each Class



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

member. Plaintiffs and Class members bring the same claims and face the same potential defenses.

84. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

85. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for SelectBlinds's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

86. By its conduct and omissions alleged herein, SelectBlinds has acted and refused to act on grounds that apply generally to the Class members, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

87. SelectBlinds is primarily engaged in the business of selling goods. Each cause of action asserted by Plaintiffs against SelectBlinds in this pleading arises out of and is limited to communications related to SelectBlinds's sale of goods.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## CAUSES OF ACTION

**COUNT I**
**Violation of the Washington Consumer Protection Act**
**RCW Chapter 19.86**

88. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

89. Each Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a representative of the Class.

90. The CPA is Washington's principal consumer protection statute. RCW 19.86. The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020.

91. The CPA recognizes and incorporates *per se* violations. "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown*, 4 Wn.3d at 592. The Washington Legislature routinely prohibits certain specified conduct but, instead of, or in addition to, creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA.

92. If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

93. A plaintiff can plead a violation of the CPA by pleading that the CPA was violated *per se* due to a violation of CEMA. *See Brown*, 4 Wn.3d at 584 ("A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)."); *see also* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line.").



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

94. CEMA prohibits a person from initiating the transmission to an email address that the sender knows or has reason to know is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b). The Washington Supreme Court has held that this includes subject lines with *any* false or misleading information. *Brown*, 4 Wn.3d at 596 ("[CEMA] prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails.") (emphasis in original).[4]

95. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers*, 415 F. Supp. 3d at 1011 (holding that plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "XX% off" statements in the subject line).

96. Under CEMA, it is irrelevant whether the commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011.

97. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to Plaintiffs' business and property, and (5) causation. *Wright*, 189 Wn.2d at 728. Because Plaintiff alleges a *per se* CPA violation by alleging a CEMA violation, all of these five elements are satisfied as a matter of law. *Id.* at 724; *see also Brown*, 4 Wn.3d at 584.

98. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 4 Wn.3d at 584. Accordingly, "CEMA does not require a showing of injury for

---

[4] CEMA also prohibits a person from initiating the transmission from a computer located in Washington State of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.020(1)(b). Plaintiffs are not alleging a CEMA violation under this prong because, as of the filing of this pleading, Plaintiffs do not possess information that the offending emails were transmitted from a computer located in Washington State. Plaintiffs reserve the right to seek to amend this pleading in the event that Plaintiffs obtains information, through discovery or otherwise, which indicates that the offending emails were transmitted from a computer located in Washington State.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Id.* at 592; *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

99. A plaintiff who successfully pleads and proves a CEMA violation as a *per se* violation of the CPA may recover the remedies which the plaintiff chooses to seek that are available under the CPA (e.g., injunctive relief, treble damages, attorneys' fees and costs (RCW 19.86.090)) and/or the remedies available under CEMA (e.g., statutory damages of $500 per email sent in violation of CEMA and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

100. "Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages." *Brown*, 4 Wn.3d at 584. A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com*, at *7 ("[CEMA] provides statutory damages of $500 for every email that violates it.").

101. SelectBlinds is a "person" within the meaning of CEMA. RCW 19.190.010(11).

102. SelectBlinds has initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of numerous commercial emails with subject lines containing false or misleading information to Plaintiffs and the Class. RCW 19.190.030(1)(b).

103. The subject lines of SelectBlinds's emails contained materially false or misleading information.

104. The false or misleading information in the subject lines of SelectBlinds's emails was intended to, or had the capacity to, deceive a substantial portion of the public.

105. The emails were electronic mail messages, in that they were emails sent to an email address; the emails also referred to an internet domain, whether or not displayed, to which an email can or could be sent or delivered. RCW 19.190.010(5).

106. The emails were "commercial electronic mail messages," in that they were sent for the purpose of promoting goods or services for sale or lease. RCW 19.190.010(2).



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

107. SelectBlinds was the original sender of the emails.

108. Plaintiffs and the Class members each received the emails at their electronic mail addresses, which are the destinations, commonly expressed as a string of characters, at which they receive and to which electronic mail may be sent or delivered. RCW 19.190.010(4).

109. SelectBlinds initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of the emails to one or more email addresses that SelectBlinds knew, or had reason to know, was held by a Washington State resident, i.e., Plaintiffs and members of the Class.

110. At all relevant times, SelectBlinds knew, or had reason to know, that the intended recipients (Plaintiffs and members of the Class) were residents of the State of Washington because, without limitation: (1) SelectBlinds possessed actual knowledge of Plaintiffs' and each Class member's state of residence; (2) SelectBlinds possessed constructive knowledge of Plaintiffs' and each Class member's state of residence; (3) information was available to SelectBlinds upon request from the registrant of the internet domain name contained in each recipient's email address; and/or (4) SelectBlinds otherwise knew or should have known or had reason to know that Plaintiffs and the members of the Class were residents of the State of Washington.

111. For example, without limitation, SelectBlinds knew or had reason to know that it sent emails to Washington residents because nearly every consumer who received its commercial emails had previously provided SelectBlinds with his or her shipping address and billing address when the consumer placed an order on the SelectBlinds website.

112. SelectBlinds engaged in a pattern and practice of violating CEMA. As a result of SelectBlinds's acts and omissions, Plaintiffs and members of the Class are entitled to $500 in statutory damages for each and every email that violated CEMA that was transmitted to them. Plaintiffs and members of the Class are also entitled to recover actual damages, treble damages, and attorneys' fees and costs, pursuant to RCW 19.86.090.

113. Treble damages are appropriate under these circumstances because, without limitation, SelectBlinds's misconduct has been "an ongoing course of conduct affecting



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

114. **Permanent injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the CPA to protect the general public from SelectBlinds's misconduct.

115. The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful conduct is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests.

*Scott v. Cingular Wireless*, 160 Wn.2d 843, 853 (2007) (citations omitted).

116. A consumer may seek injunctive relief to protect the public even if the requested relief would not directly benefit him or her. *See Hockley v. Hargitt*, 82 Wn.2d 337, 350-51 (1973).

117. SelectBlinds's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by SelectBlinds absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining SelectBlinds from committing the unlawful conduct alleged herein.

118. The balance of the equities favors the entry of permanent public injunctive relief against SelectBlinds. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from SelectBlinds's ongoing misconduct absent the entry of permanent public injunctive relief against SelectBlinds.

119. Plaintiffs lack an adequate remedy at law to prevent SelectBlinds from engaging in the unlawful conduct alleged herein. Plaintiffs continue to receive commercial emails from SelectBlinds, and Plaintiffs want to continue receiving commercial emails from SelectBlinds in



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the future, provided that the subject lines of the emails do not contain false or misleading information. Plaintiffs will be harmed if, in the future, they receive commercial emails from SelectBlinds that have false or misleading information in their subject lines.

120. Monetary damages are not an adequate remedy at law for *future* harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent SelectBlinds from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know how many violative emails SelectBlinds will send Plaintiffs in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful conduct, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by SelectBlinds.

## COUNT II
## Violation of the Washington Commercial Electronic Mail Act
## RCW Chapter 19.190

121. Plaintiffs reallege and incorporate by reference all paragraphs alleged hereinabove.

122. Each Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a representative of the Class.

123. CEMA creates an independent private of right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). It is Plaintiffs' intent in this count to plead an independent CEMA cause of action only to the extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright*, 189 Wn.2d at



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

728 n. 3 ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

124. SelectBlinds has violated CEMA on the grounds alleged in Count I above.

125. For the reasons alleged in Count I, Plaintiffs seek, and may obtain, a permanent public injunction against SelectBlinds.

**PRAYER FOR RELIEF**

Plaintiffs Mary Helms and Linda Baker, on behalf of themselves and the proposed Class, each request that the Court order relief and enter judgment against Defendant SelectBlinds LLC, as follows:

1. Declare this action to be a proper class action, certify the proposed Class and appoint Plaintiffs and their counsel to represent the Class;

2. Declare that SelectBlinds's conduct alleged herein violates the CPA and CEMA;

3. Order SelectBlinds to pay Plaintiffs and each member of the Class statutory damages of $500 for each and every commercial email that SelectBlinds transmitted to them within the applicable statute of limitations that contained false or misleading information in the subject line (specifically, a "xx% Off" or similar percentage-off statement or a "Buy 1 Get 1 Free" or similar "free" offer statement) in violation of CEMA pursuant to, without limitation, RCW 19.190.020(1)(b), RCW 19.190.030(1)(b), and RCW 19.190.040(1);

4. Order SelectBlinds to pay treble damages pursuant to RCW 19.86.090 pursuant to RCW 19.86.090;

5. Permanently enjoin SelectBlinds from engaging in the unlawful conduct alleged herein, pursuant to, without limitation, RCW 19.86.090 and RCW 19.190.090(1);

6. Order SelectBlinds to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

7. Grant such other relief as this Court deems just and proper.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**DEMAND FOR JURY TRIAL**

Each Plaintiff demands trial by jury on all issues so triable.

Dated: June 4, 2026

HATTIS LUKACS & CORRINGTON

By: ______________________
Paul Karl Lukacs

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs, WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650

BARG SINGER HOESLY PC

By: _/s/ Cody Hoesley*______
Cody Hoesly

Cody Hoesly, WSBA No. 41190
choesly@bargsinger.com
121 SW Morrison St., Ste. 600
Portland, OR 97204
Tel: 503.241.3311

DOVEL & LUNER, LLP

By: _/s/ Jonas Jacobson*__________
Jonas Jacobson

Simon Franzini, WSBA No. 63689
simon@dovel.com
Jonas Jacobson, WSBA No. 62890
jonas@dovel.com
201 Santa Monica Blvd, Suite 600
Santa Monica, CA 90401
Tel: 310.656.7066

*Attorneys for Plaintiffs*
*and the Proposed Class*

*Pursuant to LCR 11(a)(6)(B)(ii), the filer, Paul Karl Lukacs, Esq., confirms that the contents of this document are acceptable to all signers and received express written permission from the additional signer or signers to type (or direct the filer's staff to type) the additional "s/ [Name]" signature or signatures.